| | | |
|---|---|---|
| United States District Court | | Southern District of Texas |

| | | |
|---|---|---|
| Juan R. Enriquez, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| versus | § | Civil Action H-73-900 |
| | § | |
| W.J. Estelle, et al., | § | |
| | § | |
| Defendants. | § | |

# Opinion on Contract

1. *Introduction.*

A prisoner signed an agreement with the state of Texas to settle his civil-rights case. After Texas performed, he moved to re-open his suit because of a partial failure of consideration. The contract will be enforced.

2. *Background.*

In 1973, Juan R. Enriquez sued the Texas prison system for racial discrimination in housing within the prison system. In 2002, the parties agreed to settle. On December 18, 2002, assistant attorney general J. Lee Haney wrote Enriquez to confirm their settlement agreement. In it, she wrote

> In order to demonstrate our good faith in fulfilling this settlement, Adrian Young and I secured your transfer from the Telford Unit to the Michael Unit. We have also secured your enrollment in the WV 1034 Business Computer Information Systems (BCIS) Windham School class. The Defendants have agreed to pay you seven thousand five hundred dollars ($7,500) for full and final settlement . . . in exchange for a signed release and dismissal with prejudice of all your claims and costs as Plaintiff herein.

Haney then asked Enriquez to sign the letter if it accurately reflected their agreement. He did that same day. He also appended a handwritten note that said, "Everything is in order except for a couple of loose ends, but send me the proposal for the court you mentioned and we'll get this done."

Enriquez was transferred to the Michael unit and enrolled in the computer class. He had completed 903 hours of the class – about 90% of it – when the Windham School District eliminated that class. The school district is part of the prison system. Meanwhile, the governor approved the settlement, and on September 18, 2003, a check to Juan Enriquez was issued by the state comptroller. Haney faxed the release to Enriquez for his signature, saying that she would deliver the check to Enriquez after he signed the release.

Enriquez refused to sign the release, because the computer class had been terminated the month before. He asked the court to reinstate the case or order the defendants to pay him $69,580 for the lost course. The state attorneys requested the court to enforce the settlement. The court did. Enriquez appealed, and the court of appeals remanded the case for a evidentiary hearing on whether an agreement was reached and what its scope was.

3. *Agreement.*

Enriquez says the letter he signed was not a contract because his handwritten notation included reservations. He says that, even if it was, the agreement had three promises: transfer, class, and $7,500. Because he was not able to complete the class, Enriquez says the defendants did not perform. He wants to reinstate his original case, be paid $70,000 for the missing class hours, or both.

The prisoner and state agreed that he would dismiss his claims in exchange for $7,500. It has no ambiguity. Texas offered Enriquez $7,500 for a release of his claims, and he agreed. The transfer and the class were not the exchange of promises; they were courtesies – "to demonstrate our good faith."

By signing the letter, Enriquez accepted the state's offer of $7,500 as consideration for releasing his claims. His handwritten notation was not a negation or a counteroffer. First, it is empty, without a subject much less specifics. He disagreed with none of the terms nor requested new ones. In the hearing, Enriquez could not identify a "loose end" that he might have had in mind in writing his note. Between the execution of the contract and the cancellation of the class, he did not mention a topic to the state's lawyers that they needed to

address. Enriquez was patiently waiting for the bureaucracy to get him his check until his class was truncated.

In sum, the letter evinces a contract because the exchange of promises is clear with simple, reciprocal terms. Texas and Enriquez, who had dealt with each other since at least 1969, simultaneously and consistently intended a precise exchange.

4.  *Alternative Interpretation.*

Enriquez says that he made no contract, but that if he did, he insists that the state made three promises: (a) the transfer, (b) the computer class, and (c) $7,500. Enriquez believes that because he was not able to complete the course, he is not required to release his claims. Assuming that these non-cash items were commitments, his interpretation of the consequences is wrong.

In the agreement, Texas did not guarantee that Enriquez could complete the course. Similarly, it did not promise that Enriquez would remain in the Michael unit forever. The state enrolled him as he wished. Because the state only said it would enroll Enriquez in the class, not ensure that Enriquez complete it, there was no breach by the its termination.

Even if –as Enriquez contends – the transfer, completion of the class, and $7,500 were all promises, Texas has substantially performed them. To determining performance is substantial, the law considers things like "the degree to which the purpose of the contract is defeated" and "the ease of correction." 15 Samuel Williston, *A Treatise on the Law of Contracts* § 44:54 (4th ed. 2000).

At the hearing, Enriquez said he had completed about seventy-five percent of the academic portion of the class and about fifty percent of the lab work. Records from the Windham School show that Enriquez was enrolled for 978 hours and completed 903 hours or 92.33% of it. In either case, Enriquez completed the majority of the class and received all else he requested.

Here, Enriquez and Texas are both constricted by the classes available at the Michael unit. The nature of Enriquez's situation – life in prison – substitute performance would need to be other classes available at his unit. While the particular class Enriquez desires is no longer available, similar classes are available at the Michael unit that could have long ago been substituted for the initial class. No reformed performance is acceptable to Enriquez; he demands $70,000 and re-instatement of his civil-rights claims.

Assuming that Texas committed to the class, it has offered reasonable substitute consideration in the form of other computer classes. Enriquez has gotten his bargain, if his expanded view of the deal happened to be true.

5. *Authority.*

Enriquez also argues that attorney general's office did not have the authority to bind Texas's Department of Criminal Justice – Institutional Division, another state agency. He believes that the attorney general could not lawfully commit the prison system to move him or to enroll him in the class. If the attorney general did not have that authority, his commitment was ratified by the prison system when it did as he promised.

No question of authority has arisen. The attorney general agreed, and in the following months the Department of Criminal Justice, Governor, and Comptroller of Public Accounts all concurred. He was transferred and enrolled and Texas stood ready, willing, and able for seven years to pay him the $7,500. At no point has any part of the large, cumbersome machinery of Texas repudiated the attorney general's commitment.

The statutes of Texas have an occasional trick provision. One of them says that the attorney general cannot bind the state. Tex. Government Code §402.004 (Vernon 2005). As Texas and national courts have consistently held, that means that he may not bind the state without the affected agencies concurrence, making this dodge nothing more than a restatement of the law of agency as it applies to free-world lawyers and agents in other areas. If Texas were to assert that it was not bound by the attorney general's representation, then sensible courts would oblige the state to appear without him.

6. *Release.*

The state's getting a document of release is probably sound practice, but the letter and payment suffice.

7. Conclusion.

The letter is a contract. It represents an agreement: $7,500 for a release of claims. The transfer and the class enrollment were simply gestures to show Enriquez the good faith of the state. Because the state has performed, the court will enforce the contract. Enriquez's claims are released and the case is closed.

Signed on February 26, 2010, at Houston, Texas.

_____
Lynn N. Hughes
United States District Judge